**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CHRISTOPHER LEE BALDONADO, et al.

        Plaintiffs,

vs.                                                                              Case No. CIV-08-0008 JC/LCS

EL PASO NATURAL GAS COMPANY,

        Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Remand, filed January 25, 2008 (Doc. 9). The United States Magistrate Judge, having considered the motions, the briefs, the record, relevant law, and being otherwise fully advised, recommends that Plaintiff's motion to remand be **GRANTED**, and also recommends that Plaintiffs' request for attorney fees and costs be **DENIED**.

    **I.**    **FACTUAL BACKGROUND**

On August 19, 2000, a thirty inch natural gas pipeline owned and operated by El Paso Natural Gas Company ("Defendant") ruptured south of Carlsbad, New Mexico. (Doc. 15 at 1.) The resulting fire severely burned twelve people, all members of an extended family that had been camping at the nearby Pecos River. (Doc. 1 at 1.) Six of the campers were pronounced dead at the scene. (*Id.*) The other six were transported from the site but eventually also died from their injuries. (*Id.*)

On June 30, 2003, twenty-six emergency rescue personnel ("Plaintiffs") that had responded to the rupture commenced this action in the Fifth Judicial District Court of the State

1

of New Mexico, claiming that they had experienced emotional distress as a result of their efforts to save the campers.  (Doc. 1-2, Pleadings Vol. 1, No. 1.)  On March 2, 2004, the state district court granted Defendants' motion to dismiss the action, finding that (a) Plaintiffs' claims for negligence and willful and wanton conduct were barred by the Firefighter's Rule and (b) Plaintiffs had failed to state a claim for either negligent or intentional infliction of emotion distress.  (Doc. 1-8, Pleadings Vol. 1, No. 35.)  On June 24, 2006, the New Mexico Court of Appeals affirmed the district court's dismissal of Plaintiffs' negligent infliction of emotional distress claim, but reversed its dismissal of Plaintiffs' intentional infliction of emotional distress claim.  (Doc. 1-17, Pleadings Vol. 2, No. 63.)

On January 10, 2008, the New Mexico Supreme Court affirmed the appellate court's ruling that Plaintiffs' complaint alleges legally sufficient facts to support a first-party claim of intentional infliction of emotional distress.  (*Baldonado v. El Paso Natural Gas Co.*, Doc. 10, Ex. A at 24, 176 P.3d 277, 286 (N.M. 2007)).  Specifically, it clarified that under the Firefighter's Rule, "a firefighter may recover damages if such damages were proximately caused by (1) intentional conduct; or (2) reckless conduct, provided the harm to the firefighters exceeded the scope of risks inherent in the firefighters' professional duties."  (*Id*., at 3, 176 P.3d 279.)  Additionally, it explained that Plaintiffs' claim for intentional infliction of emotional distress could be analyzed as a first-person claim instead of a third-person claim because "various statutes and regulations could support a finding that Defendant has a special relationship with Plaintiffs."[1]  (*Id*., at 19, 176 P.3d 284.)  In particular, the court observed, 49

---

[1] An opinion issued by the New Mexico Supreme Court on December 4, 2007 concluded that such a relationship in fact exists.  (Doc. 1-23 at 19.)   In response to a Motion for Hearing filed by Defendant on December 18, 2007, however, the New Mexico Supreme Court withdrew that opinion and substituted the January 10, 2008 opinion in its place.  (*Baldonado*, Doc. 10, Ex. A at 3, 176 P.3d at 278.)  The revised opinion concludes only that a special relationship *could* be found to exist, not that one does in fact exist.  (*Id*., at 19, 176 P.3d 284.)  In my analysis of Plaintiffs' motion to remand, I have relied only on the second opinion, which is the law of the case.

C.F.R. § 192.615 requires "more of both parties than the typical relationship of a member of the public with the local fire department . . . [and for] Defendant and Plaintiffs to work together to minimize the exact risk that Plaintiffs allege led to their injuries in this case." (*Id*., at 19-20, 176 P.3d 285.) The case was then remanded to the state district court for further proceedings consistent with the New Mexico Supreme Court's opinion. (*Id*., at 24, 176 P.3d 286.)

Defendants removed the case to this Court on January 3, 2008. (Doc. 1.) Plaintiffs subsequently filed a motion to remand on January 25, 2008 (Doc. 9) and a motion to refer the remand motion to Magistrate Judge Leslie C. Smith on April 2, 2008 (Doc. 23). Plaintiffs' motion to remand also requests an award attorney fees and costs incurred because of the remand as provided by 28 U.S.C. § 1447(c). (Doc. 9.)

## II.     ANALYSIS

### A. PLAINTIFF'S MOTION TO REMAND

Defendant removed this action by asserting two grounds for federal subject matter jurisdiction: (1) substantial federal question jurisdiction under 28 U.S.C. § 1331 and (2) preemption. (Doc 1 at 2-4.) In particular, Defendant asserts that Plaintiffs' claims cannot be adjudicated without resolving substantial questions of federal law and that the New Mexico Supreme Court's attempt to impose additional safety requirements is preempted by the federal Pipeline Safety Act.[2] (Doc. 1 at 3.) Plaintiffs argue that subject matter jurisdiction does not exist under either ground and that, even if it did exist, Defendant has waived its right to remove this action. (Doc. 9.)

---

[2] It is assumed that Defendant refers to the Natural Gas Pipeline Safety Act, 49 U.S.C. §§ 60101 *et. seq.*, the statute under which 49 C.F.R. § 192.615 was promulgated.

3

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 2008 U.S. App. LEXIS 5149, at *6 (10th Cir. 2008). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). All doubts must be resolved in favor of remand. *Fajen v. Foundation Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982); *see also Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1097 (10th Cir. 2005).

A case arises under federal law if "'a well-pleaded complaint establishes either that the federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27-28 (1983)). Moreover, "[u]nder the 'complete preemption doctrine,' federal courts may exercise federal question jurisdiction over complaints that, although not presenting federal questions on their face, nonetheless present state law claims that are *preempted* by federal law." *Garley v. Sandia Corp.*, 236 F.3d 1200, 1207 (10th Cir. 2001). As discussed below, I find that (1) the well-pleaded complaint rule bars removal in this case, (2) even if it did not, substantial federal question jurisdiction does not exist, and (3) federal law does not completely preempt this action.

### 1. *Well-Pleaded Complaint Rule*

Although neither party raises the issue, it appears that removal of this case is barred by the well-pleaded complaint rule. As the Supreme Court has explained, "Congress has given the

lower federal courts jurisdiction to hear, originally or by removal from a state court, <u>only</u> those cases in which a well-pleaded complaint established either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board*, 463 U.S. at 27-28 (emphasis added). The federal question must generally appear on the face of the plaintiff's properly pleaded complaint. *Garley v. Sandia Corp.*, 236 F.3d 1200, 1207 (10th Cir. 2001) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). "If the complaint relies only on state law, the district court generally lacks subject matter jurisdiction and the action is not removable." *Palkow v. CSX Transp. Inc.*, 431 F.3d 543, 552 (6th Cir. 2005).

Here, Plaintiffs' complaint makes no mention of the federal question that is currently part of this case. (*See* Doc. 1-7.) Instead, as Defendant concedes, the question of whether 49 C.F.R. § 192.615 creates a special relationship was "interjected" into the case by the New Mexico appellate courts. (Doc. 15 at 1.) And while Defendant claims that this scenario is "unprecedented," it fails to cite any authority that suggests it creates an exception to the well-pleaded complaint rule. (*See* Doc. 15.) Because Plaintiffs' complaint, on its face, relies only on state law, this Court lacks jurisdiction, and the action is not removable.[3] *Palkow*, 431 F.3d at 553. Moreover, even if I were to look beyond the face of Plaintiffs' complaint and also consider the New Mexico Supreme Court's opinion, there is no indication, as discussed *infra*, that resolution of this federal question is essential to Plaintiffs' claim.

---

[3] It appears that Defendant may actually be seeking a second bite at the apple. If this is the case, it should have petitioned the Supreme Court for a writ of certiorari instead of seeking removal.

2.      *Substantial Federal Question Jurisdiction*

Defendant asserts, and Plaintiffs dispute, that this action involves a substantial question of federal law.  In certain cases, federal question jurisdiction will lie over state-law claims that "implicate significant federal issues" or "turn on substantial questions of federal law."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 US 308, 312 (2005).  However, this is a "slim category," and "it takes more than a federal element to open the 'arising under' door." *Empire*, 547 U.S. at 701 (quotation omitted).  "[E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto . . . if federal jurisdiction is [not] consistent with congressional judgment about the sound division of labor between state and federal courts."  *Grable*, 545 US at 313.  As the Supreme Court has explained, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id.* at 314.

**BACKDROP**

As an initial matter, I note that the Supreme Court cases *Smith v. Kansas City Title & Trust Co.*, *Merrell Dow Pharmaceuticals Inc. v. Thompson*, *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, and *Empire Healthchoice Assur., Inc. v. McVeigh* form the relevant backdrop for this issue.  255 U.S. 180 (1921); 478 U.S. 804 (1986); 545 U.S. 308 (2005); 547 U.S. 677 (2006).  In *Smith*, the Court first recognized that federal jurisdiction may exist over an ordinary state-law cause of action where "the right to relief depends upon the construction or application of [federal law]."  255 U.S. at 199. When a shareholder sought to prevent a company's directors from issuing bonds under the Federal Farm Loan Act by claiming

that the statute itself was unconstitutional, the Court found that federal jurisdiction was proper because of the significant federal interest in determining the constitutionality of a federal statute. *Id.* at 201-202.

*Merrell Dow*, however, cast serious doubt over this type of federal jurisdiction. Ryan Rory, *No Welcome Mat, No Problem?: Federal-Question Jurisdiction After Grable*, 80 ST. JOHN'S L. REV. 621, 631 (2006). There, the plaintiffs brought a negligence action, alleging that the defendant's violation of a Food Drug and Cosmetic Act ("FDCA") labeling provision raised a rebuttable presumption of negligence. 478 U.S. at 805-06. Because Congress had not created a federal remedy for misbranding under the FDCA, the Court reasoned, "the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal question-jurisdiction." *Id.* at 814. Afterwards, several circuits required a finding of a federal cause of action to support the assertion of federal-question jurisdiction over state-law claims, while others maintained that a federal issue could be substantial without Congress specifically providing for a federal remedy. *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1235-37 (10th Cir. 2006); Rory, *supra*, at 631. .

In *Grable*, the Court clarified that "*Merrell Dow* cannot be read as overturning decades of precedent . . . and converting a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." 545 U.S. at 318. Rather, the Court explained, the absence of a federal private right of action is "relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *Id.* That is, in *Merrell Dow* the missing cause of action was seen "not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction . . .

would have attracted a horde of original filings and removal causes raising other state claims with embedded federal issues." *Id*. "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id*. at 314.

*Grable* involved real property that had been seized by the Internal Revenue Service ("IRS") from the plaintiff to satisfy a federal lien deficiency. 545 US at 310. Five years after the land was sold to the defendant, the plaintiff brought suit in state court to quiet title because the IRS had allegedly failed to comply with a governing federal statute when it conveyed the seizure notice. *Id*. at 311. Even thought the tax provision at issue did not provide for a private federal cause of action, the Supreme Court found that federal jurisdiction existed because the government has a direct interest in "the prompt and certain collection of delinquent taxes" and "the availability of a federal forum to vindicate its own administrative action." *Id*. at 315.

In *Empire*, the Supreme Court summarized the factors that established the significance of the federal issue in *Grable*: "[t]he dispute there (1) centered on the action of a federal agency (IRS) and its compatibility with a federal statute, (2) the question qualified as 'substantial,' and (3) its resolution was both dispositive of the case and (4) would be controlling in numerous other cases." *Empire*, 547 U.S. at 700. When a health insurance carrier for federal employees brought suit seeking reimbursement of benefits after a beneficiary reached a settlement agreement in state court with the parties who allegedly caused his injuries, the Court explained the case was "poles apart from *Grable*" with respect to each of these aspects, and thus declined to turn the issue into a "discrete and costly 'federal case.'" *Id.* at 700.

**ANALYSIS**

The substantial-question doctrine thus has three parts: "(1) the state law claim must necessarily raise a disputed federal issue; (2) the federal interests in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities."[4] *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007); *see also Nicodemus*, 440 F.3d at 1235-37.

    i.    **Necessary and Disputed Federal Issue**

First, it appears that Plaintiffs' claim does not necessarily raise a disputed federal issue. As the New Mexico Supreme Court put it, "the extreme and outrageous nature of Defendant's conduct arises *if* there is a special relationship between Defendant and Plaintiffs. It is the *possibility* of a special relationship that permits Plaintiffs' claim under [the first-person standard.]" (*Baldonado*, Doc. 10, Ex. A at 23, 176 P.3d at 286)(emphasis added). However, the court did not indicate that Plaintiffs would be unable to maintain a third-party claim for intentional infliction of emotional distress, and it therefore does not necessarily follow that establishing a special relationship is essential to Plaintiffs' case. (*Id.*) Moreover, although 49 C.F.R. § 192.615 was the only potential source that was specifically mentioned in the opinion, the court's observation that "various statutes and regulations" could create such a relationship suggests that multiple grounds for such a finding exist. (*Id.*, at 19-21, 176 P.3d 284-86.) Thus, although the parties' briefs leave no doubt that a federal issue is disputed, that issue cannot be considered necessary to Plaintiffs' case. (*See, e.g.* Doc. 15 at 3; Doc. 20 at 3.)

---

[4] While most frequently divided into three parts, the doctrine is also sometimes split into two or four parts. *See, e.g.*, *Utah v. Eli Lily and Co.*, 509 F.Supp.2d 1016, 1021-25 (D. Utah 2007) (dividing it into two parts); Ryan Rory, *No Welcome Mat, No Problem?: Federal-Question Jurisdiction After Grable*, 80 ST. JOHN'S L. REV. 621 (2006) (dividing it into four parts). However stated, the test remains the same.

### ii.      Substantial Federal Interest

Next, the substantiality of the federal interest must be assessed. *See Grable*, 545 U.S. at 314. Defendant argues that the federal question is in fact "substantial" in this case because "the specter of a 'special relationship' compelled the evaluation of Plaintiffs' emotional distress claim under the 'first person' standard . . . [and] Plaintiffs' entire case . . . depends on whether their emotional distress claim is analyzed under a first-person or a third-person test. (Doc. 15 at 6-7.) However, this position seems to confuse *necessity*, which was explained *supra*, with *substantiality*.

As explained in *Empire*, "four aspects of a case or an issue that affect the substantiality of the federal interest in that case or issue: (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e. the issue is not anomalous or isolated)." *Mikulski*, 501 F.3d at 570 (citing *Empire*, 547 U.S. at 700). "While certain of these factors may be more applicable than others in any given set of circumstances, no single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case." *Mikulski*, 501 F.3d at 570.

In this case, the first factor weighs against characterizing the federal interest as substantial because a federal agency is not involved in the dispute. *See Empire*, 547 U.S. at 700 (explaining that substantial federal question jurisdiction existed in *Grable* partly because "[t]he dispute centered on the action of a federal agency (IRS) and its compatibility with a federal

statute."). In particular, Plaintiffs' claim for intentional infliction of emotional distress was triggered not by the action of any government agency, but instead by the action of Defendant, a private corporation. (*See* Doc. 1.) Likewise, whether a government agency has complied with a federal statute or regulation is not an issue here, unlike the situation in *Grable*. (*Id.*)

The second factor "is far more subjective and requires that we decide whether the question to be resolved is important." *Mikulski*, 501 F.3d at 570. A question is "important," as used in this context, if the federal government has a significant interest in its outcome. *See, e.g., Grable*, 545 U.S. at 315; *Empire*, 547 U.S. at 700-01. For example, in *Grable* the meaning of the federal provision was an important issue because the government has a direct interest in "the prompt and certain collection of delinquent taxes" and "the availability of a federal forum to vindicate its own administrative action." 545 U.S. at 315. Similarly, the interpretation of federal land-grant statutes was considered important by the Tenth Circuit in *Nicodemus* because "the United States has a reversionary interest in the lands when no longer used for their designated purposes." 440 F.3d at 1236. On the opposite end of the spectrum are cases like *Empire* and *Mikulski*. In *Empire*, although the Supreme Court noted that the United States has an "overwhelming interest . . . in the health and welfare of federal workers," it ultimately concluded that those interests were not sufficiently implicated by an insurer's contract-derived claim to be reimbursed from the proceeds of a federal worker's state-court initiated tort litigation. 547 U.S. at 701. Similarly, when the plaintiffs in *Mikulski* sought to rely on the defendant's violation of a provision in the federal tax code as evidence of fraudulent misrepresentation, the Sixth Circuit found that it was "more likely than not that this particular question is not particularly important to the federal government." 501 F.3d at 570.

With this framework in mind, I find that the United States does not have a direct and significant interest in the disputed federal issue here. Although the federal government certainly has a substantial interest in ensuring the safe operation of gas pipelines and in encouraging cooperation between pipeline operators and public officials, this case, regardless of its resolution, does not appear to threaten those interests. Pipeline operators will continue to be bound by the provisions of 49 C.F.R. § 192.615 regardless of whether the regulation is found to create a special relationship between the parties for the purpose of enabling a state tort action. Moreover, the outcome of this case cannot be expected to significantly alter the conduct of pipeline operators, as cases of this nature are so infrequent. Further, the federal issue here is embedded in a "garden variety state tort law" claim, a situation that the Supreme Court has noted rarely warrants federal jurisdiction. *See Grable*, 545 U.S. at 318-19.

The third factor also weighs against characterizing the federal interest as substantial. As Plaintiffs correctly note, the resolution of this issue is not dispositive of the case. (*See* Doc. 20 at 6-7.) In a first-person claim for intentional emotional distress, "four elements must be proven: '(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiffs; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimaint's mental distress.'" (*Baldonado*, Doc. 10, Ex. A at 14-15, 176 P.2d at 283) (quoting *Trujillo v. Northern Rio Arriba Elec. Coop., Inc.*, 41 P.3d 333, 342 (N.M. 2001)). If Plaintiffs' construction prevails and 49 C.F.R. § 192.615 is found to create a special relationship between the parties, Plaintiffs will still have to prove that Defendant's conduct was outrageous in light of this relationship. (*Id.*, Doc. 10, Ex. A at 14-15, 176 P.2d 283.) Moreover, even if Defendant's

conduct is judged outrageous, Plaintiffs will still have to establish that it was intentional or reckless in such a way that the Firefighter's Rule does not bar recovery. (*Id.*, at 3-4, 176 P.2d 278-79.)

Finally, the fourth factor is again subjective and requires speculation about whether a decision on this particular issue will be controlling over numerous other cases. *Mikulski*, 501 F.3d at 571; *see also Empire*, 547 U.S. at 700. The circumstances of this case are unusual. (*See* Doc. 1.) In fact, the type of claim is so uncommon that the New Mexico Supreme Court was prompted to remark that "[w]e are aware of no cases where a firefighter's claim for intentional infliction of emotional distress has been decided on the merits, and thus find little guidance in the precedent of either New Mexico or other jurisdictions." (*Baldonado*, Doc. 10, Ex. A at 21, 176 P.3d at 285.) With this in mind, I find it unlikely that a decision will be controlling over many other cases. *Empire*, 547 U.S. at 700. Simply put, the issue of whether 49 C.F.R. § 192.615 creates a special relationship so as to enable a first-person claim for intentional infliction of emotional distress is unlikely to arise very often.[5]

In sum, each of the four factors identified by the Supreme Court suggests that the federal interest in the present issue is not substantial. No federal agency action is involved the case, the federal question does not qualify as "important," and its resolution is neither dispositive nor likely to be controlling in numerous other cases. *Empire*, 547 U.S. at 700. Accordingly, I must conclude that the federal interest is not substantial, and that a state court would be a more appropriate forum for this case.

---

[5] If anything, this case will instead be controlling on future cases because it clarifies the scope of the Firefighter's Rule in New Mexico.

### iii. Disturbance of Congressionally Approved Balance of Federal and State Judicial Responsibilities

Even if the federal question in this case was substantial, I would be hesitant to find that the exercise of jurisdiction over this lawsuit would not impermissibly disrupt the congressionally approved balance of federal and state judicial responsibilities. *See Grable*, 545 U.S. at 315. In this case, a welcome mat is not present because the regulation in question, 49 C.F.R. § 192.615, does not contain a federal cause of action. While the absence of a cause-of-action provision is not determinative, it is nonetheless an important consideration that suggests Congress did not intend for federal courts to exercise jurisdiction in this sort of situation. *See Grable*, 545 U.S. at 318 ("*Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires."); *see also Mikulski*, 501 F.3d at 573 (while the absence of a cause-of-action provision is not determinative, it "certainly provides a starting point for this part of the analysis."); *Utah v. Eli Lily and Co.*, 509 F.Supp.2d 1016, 1024 (D. Utah 2007) (a finding that exercise of jurisdiction would disturb the congressionally approved balance is supported by the "significance of the absence of a federal cause of action.").

Moreover, two other considerations suggest that it would be better if this action was resolved by the New Mexico state courts. First, the state courts already have more than four years of experience dealing with the facts and issues in this case. The action was commenced in the Fifth Judicial District Court of the State of New Mexico on June 30, 2003, and was not removed until January 3, 2008. (Doc. 1.) Second, the state courts have an interest in maintaining oversight over the significant issue of state law in this case – the scope of the Firefighter's Rule

in New Mexico. (*See Baldonado*, Doc. 10, Ex. A at 6-13, 176 P.3d at 280-282.)  While the New Mexico Supreme Court has already set the legal standard and conceded that "it will be up to the jury to determine whether Plaintiffs' stress did in fact exceed that scope," comity requires that New Mexico state courts be allowed to guide the jury in that determination.  (*Id*. at 12.)  And while these last two considerations do not reflect any specific intent of Congress, they are nonetheless relevant to a calculation of whether the exercise of federal jurisdiction here would disturb the balance of federal and state judicial responsibilities.  *See Grable,* 545 U.S. at 313-14 ("[T]here must always be an assessment of any disruptive portent of exercising federal jurisdiction.").

    3.      *Complete Preemption*

Defendant argues that the New Mexico Supreme Court's "imposition of safety and disclosure requirements that the [Natural Gas Pipeline Safety] Act does not recognize constitutes an impermissible, collateral attempt to regulate pipeline safety, an area completely preempted by the Act."  (Doc. 15 at 8.)  In support of this position, Defendant cites a number of cases where city or state efforts to impose additional safety requirements on interstate pipeline operators were found to be preempted by federal law.  (*Id*. at 8-11.)  For example, in *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872 (9th Cir. 2006), the Ninth Circuit found that the Pipeline Safety and Improvement Act ("PSA") *expressly* preempted the City of Seattle's attempt to provide safety oversight of a hazardous liquid pipeline within the city's boundaries.[6]  Meanwhile, in *No Tanks Inc. v. Public Utils. Comm'n*, 697 A.2d 1313 (Me. 1997), the Supreme Court of Maine found that the Natural Gas Act completely preempted the field of regulating the rates and facilities of

---

[6] Although express and complete preemption are often confused, only the latter may support removal.  *See Felix v. Lucent Technologies, Inc.*, 387 F.3d 1146, 1153-58 (10th Cir. 2004) (explaining and distinguishing the two concepts).

interstate natural gas.  And in *Southern Cal. Gas Co. v. Occupational Safety and Health Appeals Bd.*, 58 Cal. App. 4th 200 (Cal. App. 1997), the California Court of Appeals found that the Natural Gas Pipeline Safety Act completely preempted the field of pipeline safety.

Unlike the cases cited by Defendant, however, the present case involves no regulatory activity.  Contrary to Defendant's assertions, the New Mexico Supreme Court is not attempting to impose additional safety requirements on pipeline operators.  Instead, it has only asserted that Plaintiffs *may* recover under a first-person claim for intentional infliction of emotional distress *if* a special relationship exists between the parties, and that 49 C.F.R. § 192.615 *could* support a finding of such a relationship.  (*Baldonado*, Doc. 10, Ex. A at 19-23, 176 P.3d at 284-86.)  It did not specify that (a) 49 C.F.R. § 192.615 does in fact create a special relationship, (b) liability or additional obligations would automatically attach even if it did, or (c) a special relationship could not be found without considering 49 C.F.R. § 192.615.  (*Id.*)  Thus, the current situation is much different than a city refusing to renew a pipeline operator's franchise until it complies with a list of safety demands, or a utilities commission reviewing contracts between pipeline operators for compliance with safety and environmental requirements.  *See Olympic Pipe Line*, 437 F.3d 874; *No Tanks*, 697 A.2d at 1314.  Because the New Mexico Supreme Court has not entered the field of pipeline safety, the complete preemption doctrine is inapplicable, and Defendant's argument must fail.  *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim.")

### *4.* *Waiver*

Plaintiffs assert that Defendant waived its right to remove this case in two ways: (1) explicitly by means of a joint motion and stipulation that was granted by the state district court in an order approved by both parties (Doc. 10, Ex. C), and (2) implicitly "by its overarching utilization of the New Mexico state courts." (Doc. 10 at 17-20.) Because federal jurisdiction is absent in this case, as explained *supra*, this Court lacks the authority to resolve this issue.

### B. PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS

Title 28, Section 1447(c) of the United States Code provides that a federal district court's order remanding a removed case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. *See* 28 U.S.C. § 1447(c). Recently, the Supreme Court clarified that although district courts maintain discretion in ordering fees and costs, the decision should turn on the reasonableness of the removal. *Martin v. Franklin Capital Corp*, 546 U.S. 132, 141 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447 only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.*

Here, the Court fails to find that Defendant lacked an objectively reasonable basis for seeking removal. *Id.* "Federal-question jurisdiction has always been an elusive concept at its boundaries." Ryan Rory, *No Welcome Mat, No Problem?: Federal-Question Jurisdiction After Grable*, 80 ST. JOHN'S L. REV. 621 (2006). Indeed, the Supreme Court has even described "the presence of a federal issue in a state-created cause of action" as posing "'the litigation-provoking problem.'" *Merrell Dow*, 478 U.S. at 809-10 (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 470 (1657) (Frankfurter, J., dissenting)); *see also Grable*, 545 U.S. at 314 ("These

considerations have kept us from stating a single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties."). Accordingly, an award of attorney's fees under § 1447 is not appropriate. *Martin*, 546 U.S. at 141.

### III.     RECOMMENDATION

It is hereby recommended that Plaintiffs' motion to remand (Doc. 9) be **GRANTED** and that this action be **REMANDED** to the Fifth Judicial District Court, County of Chaves, State of New Mexico. It is further recommended that Plaintiffs' motion for attorney fees and costs (Doc. 9) be **DENIED**. Within ten days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Boulevard N.W., Albuquerque, NM 87102. A party must file objections within the ten day period if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**